# EXHIBIT 7

H.R. Rep. No. 73-1780 (1934)

| 73D CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>No. 1780 |
|---|---|---|

# TAXATION AND REGULATION OF FIREARMS

MAY 28, 1934.—Committed to the Committee of the Whole House on the state of the Union and ordered to be printed

Mr. DOUGHTON, from the Committee on Ways and Means, submitted the following

# REPORT

[To accompany H.R. 9741]

The Committee on Ways and Means, to whom was referred the bill (H.R. 9741) to provide for the taxation of manufacturers, importers, and dealers in certain firearms and machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof, having had the same under consideration, report it back to the House without amendment and recommend that the bill do pass.

### GENERAL STATEMENT

This bill is the result of the suggestions to Congress for many years that there is a legitimate field and method of regulation of dangerous weapons by the Congress. It has been frequently pointed out that there are limitations on the States, that the Federal Government has powers in the field, and that the evil needs a remedy. The growing frequency of crimes of violence in which people are killed or injured by the use of dangerous weapons needs no comment. The gangster as a law violator must be deprived of his most dangerous weapon, the machine gun. Your committee is of the opinion that limiting the bill to the taxing of sawed-off guns and machine guns is sufficient at this time. It is not thought necessary to go so far as to include pistols and revolvers and sporting arms. But while there is justification for permitting the citizen to keep a pistol or revolver for his own protection without any restriction, there is no reason why anyone except a law officer should have a machine gun or sawed-off shotgun.

### EXPLANATION OF THE BILL

In general this bill follows the plan of the Harrison Anti-Narcotic Act and adopts the constitutional principle supporting that act in providing for the taxation of fire-arms and for procedure under which the tax is to be collected. It also employs the interstate and foreign commerce power to regulate interstate shipment of fire-arms and to prohibit and regulate the shipment of fire-arms into the United States.

Section 1 contains the definitions of terms used in the proposed legislation.

Subsection (a) defines the firearms subject to the taxing provisions of the bill. The term "firearm" is defined to mean a shotgun or rifle having a barrel of less than 18 inches in length, any other gun (except a pistol or revolver) if the gun may be concealed on the person, a machine gun, and a muffler or silencer for any kind of gun whether or not such a gun is included within the definition of firearm in the bill. It will be observed that pistols, revolvers, and ordinary long shotguns and rifles are not taxed, nor is their shipment, possession, or use regulated.

Subsection (b) contains the usual definition of machine gun as a weapon designed to shoot more than one shot without reloading and by a single pull of the trigger. Such guns are included in the definition whether or not they may be carried or concealed on the person.

Subsection (c) contains the usual inclusive definition of "person."

Subsection (d) defines "continental United States" to mean the States of the Union and the District of Columbia. The use of that term throughout the bill confines the taxing features of the bill to that area and the use of that term and the term "interstate commerce" as defined, apply the regulatory provisions of the bill concerning importation and transportation to shipment from any place outside the States and the District of Columbia.

Subsection (e) defines "importer" to mean anyone who brings firearms into the continental United States for sale.

Subsection (f) defines "manufacturer" to mean one engaged in the continental United States in the manufacture of firearms or who produces any firearm for sale or disposition.

Subsection (g) defines "dealer" to mean any person not a manufacturer or importer who is engaged in the business of selling firearms and includes wholesalers, pawnbrokers, and retailers and includes such persons who sell both new and used firearms.

Subsection (h) defines "interstate commerce" as transportation from State to State or to the District of Columbia and transportation from any place subject to the jurisdiction of the United States to any State or the District of Columbia.

Subsections (i) and (j) define "Commissioner" to mean the Commissioner of Internal Revenue and "Secretary" to mean Secretary of the Treasury.

Subsection (k) defines "to transfer" and "transferred" to include sell, assign, pledge, lease, loan, give away, or otherwise dispose of.

Section 2 requires importers, manufacturers, and dealers to register in the district in which they do business and to pay an annual occupational tax. Importers pay $1,000, manufacturers pay $1,000, pawnbrokers pay $300, and other dealers pay $200. The section

TAXATION AND REGULATION OF FIREARMS 3

makes it unlawful to engage or to continue to engage in these businesses without having registered and paid the tax.

Section 3 (a) imposes a transfer tax of $200 per firearm on the transfer thereof in the continental United States. Such tax is to be in addition to import taxes and paid by the transferor and is to be evidenced by stamps affixed to the order for transfer.

Under subsection (b) of this section the administrative provisions of the Harrison Act and consistent provisions of the internal revenue laws are made applicable in the case of this tax.

Section 4 (a) makes it unlawful for any person to transfer a firearm except in pursuance of a written order from the transferee. This order is to be in such form as may be prescribed by the Commissioner. The order is to be in duplicate and the transferee is to be identified by such means as may be prescribed by regulations, but the bill specifically writes into the law a provision that if the transferee is an individual, the application must show his fingerprints and his photograph.

Subsection (b) authorizes the preparation of forms and their distribution to collectors of internal revenue.

Subsection (c) requires the transferor to set forth in such copy of the order the marks or numbers identifying the firearm and to forward a copy of the order to the Commissioner. The original of the order with stamps affixed is to be returned to the applicant.

Subsection (d) requires the transferor to transfer the stamp-affixed order for each prior transfer

Subsection (e) requires notification of the Commissioner of transfers which are exempted under section 12 which relates mainly to transfers to governmental officers.

Subsection (f) exempts importers, manufacturers, and dealers who have registered and paid the occupational tax from the provisions of section 4 with respect to orders in transactions with each other but they are required, under regulations, to record and report such transactions.

Section 5 requires persons who possess a firearm (as defined in the bill) to register, within 60 days after the effective date of the legislation, the firearm with the collector of the district of his residence, but firearms lawfully acquired under the law after the effective date need not be registered. In a prosecution for violation of section 6, possession of a firearm, after the effective date creates a presumption, which is not conclusive, that the person prosecuted came into possession after the effective date of the act.

Section 6 makes it unlawful to receive or possess a firearm in violation of section 3 or 4.

Section 7 authorizes seizure and forfeiture of firearms transferred in violation of the bill. Existing procedure is made applicable except that forfeited firearms are not to be sold at auction, and the Secretary may destroy them, distribute them for the use of the United States, or sell them to States, Territories, or political subdivisions thereof, possessions, or the District of Columbia.

Section 8 (a) requires manufacturers and importers of firearms to identify them with a number or other identification mark. Subsection (b) makes unlawful the obliteration, removal, or alteration of the number and the possession of a firearm when the number or mark has been obliterated, removed, or altered, is sufficient to authorize

4   TAXATION AND REGULATION OF FIREARMS

conviction unless the defendant explains such possession to the satisfaction of the jury.

Section 9 requires importers, manufacturers, and dealers to keep books and records and make returns under regulations.

Section 10 (a) prevents firearms from being brought into any place subject to the jurisdiction of the United States. The Secretary of the Treasury is given power to exempt a firearm from this prohibition when the purpose of importation is shown to be lawful and when the firearm is unique or of a type not obtainable in the United States or the Territory. Subsection (b) makes unlawful criminal acts incidental to importation, and possession of the proscribed firearm is sufficient to authorize conviction, unless the defendant explains his possession to the satisfaction of the jury.

Section 11 makes unlawful the transportation in interstate commerce of an unregistered firearm and for any person who has not the stamp-affixed order in his possession to ship, carry, or deliver any firearm in such commerce.

Section 12 provides for the issuance of rules and regulations to carry out the act.

Section 13 exempts transfers of firearms when the firearm is transferred to the United States or any State, Territory, possession, or political subdivision, or to any peace officer or any Federal officer designated by the commissioner, or when the firearm is unserviceable and is transferred as a curiosity or ornament.

Section 14 punishes violations by a fine of not more than $2,000, or imprisonment for not more than 5 years, or both.

Section 15 exempts firearms provided for in the bill if the tax under the bill has been paid from the taxes on pistols and revolvers and sporting goods provided in existing law.

Section 16 contains the separability clause in the event of unconstitutionality.

Section 17 makes the proposed act effective on the 30th day after the date of its enactment.

Section 18 contains the short title.

O