IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN S. WATSON Individually and as Trustee of the WATSON FAMILY GUN TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General of the United States, and B. TODD JONES, Director of the Bureau of Alcohol Tobacco Firearm & Explosives,<br><br>Defendants. | Case No.2:14-cv-06569-SD |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff hereby submits this Surreply to briefly address some of the arguments raised by the Defendants in their Reply brief.

### A. Plaintiff has Standing and the Defendants' Contentions to the Contrary Rest on a Fallacious Characterization of Pennsylvania Law

In their Reply Brief, ECF No. 14, the Defendants have doubled down on their attempt to mislead the Court into believing that Pennsylvania law prohibits the possession of machine guns. As discussed in Plaintiff's Brief in Opposition, ECF No. 13, the Defendants' contentions simply are not true. *See* 18 Pa. C.S.A. §908(b)(1) (providing for lawful possession of machine guns in Pennsylvania). Indeed, as the record keepers for the National Firearms Registration and Transfer Record, the Defendants are aware of the number of machine guns registered and owned in Pennsylvania which would not be possible if Pennsylvania law in fact prohibited machine guns as the Defendants claim. Should this Honorable Court permit discovery, an accurate number of

civilian owned machine guns in Pennsylvania will be ascertained, thus disproving the Defendants' contention that machine guns are illegal in Pennsylvania.

### B. Plaintiff's Arguments are not Foreclosed by *Heller*

The Defendants argue that as the "core" of the Second Amendment is the right to self-defense, only those weapons purely designed for self-defense purposes are protected and any other weapon can be prohibited by the government. Defs.' Reply Br. Supp. 3-4, ECF No. 14. The Defendants' logic, if applied in another context, such as the First Amendment, would result in the ludicrous conclusion that as the "core of the First Amendment" is "speech in a public forum," only public speech is protected by the First Amendment and any speech behind closed doors can be prohibited. *Id.* at 7, (quoting *Drake v. Filko*, 724 F.3d 426, 436 (3d Cir. 2013)). Quite simply, the Supreme Court stating that the "core" of the Second Amendment is the right to self-defense does not mean that self-defense constitutes the entire scope of the right or that there are no other purposes for the right. Accordingly, it is imperative for the Court to not only look at the self-defense aspect of the M-16 at issue, but also other aspects such as military use that are protected by the Second Amendment.

However, with relation to self-defense, it is perplexing that the Defendants argue that firearms that fire a single projectile with each pull of the trigger have immense self-defense value, yet that exact same firearm, if modified to fire multiple projectiles with each function of the trigger, is so devoid of self-defense value as to not even come under the scope of the Second Amendment. There can be no doubt that machine guns, in particular the M-16 at issue, have self-defense value. It is illogical to imagine a scenario in which one would be forced to use lethal force in defense of his life where a single round would perform a superior job to multiple rounds. Indeed, if machine guns had no self-defense value, the Department of Homeland

2

Security would not have published a request for proposal for "personal defense" machine guns. Department of Homeland Security, *Personal Defense Weapons Solicitation*, FEDERAL BUSINESS OPPORTUNITIES (June 7, 2012, 11:47 AM) https://www.fbo.gov/?s=opportunity&mode=form&id=d791b6aa0fd9d3d8833b2efa08300033. Furthermore, if machine guns have no self-defense value, it is unfathomable as to why those charged with protecting the lives of the most important leaders of our nation, including the President and Vice-President, would carry machine guns. *See* RONALD KESSLER, IN THE PRESIDENT'S SECRET SERVICE 190 (2010) (discussing the Secret Service's use of the MP5 submachine gun).

      Rather than attempting to explain their position that machine guns have no self-defense value, the Defendants turn to the sensational claim that if this Court were to find the M-16 at issue protected by the Second Amendment, then so too would "numerous instruments of dramatic destructive capability such as anti-personnel mines, rocket-propelled grenades ('RPGs'), and even man-portable surface-to-air missiles" be protected. Defs.' Reply Br. Supp. 4, ECF No. 14. However, not only is Plaintiff not challenging the prohibition of the cited weapons, those weapons bear little, if any, relation to bearable machine guns and cannot be properly discussed within the context of the present suit. Indeed, even the National Firearms Act and the Defendants' own regulations clearly distinguish machine guns and the cited weapons, which are classified as "destructive devices." 26 U.S.C. § 5845(f); 27 C.F.R. § 479.11. Accordingly, if this Honorable Court were to hold machine guns protected under the Second Amendment, it would have no bearing on the constitutionality of destructive devices, nor would it be appropriate for this Court's holding to address such weapons.

**C. The Defendants' Dangerous and Unusual Discussion is Faulty**

In Plaintiff's Brief in Response, Plaintiff engaged in a discussion of the historical meaning of the "dangerous and unusual" standard as one prohibiting the carrying of weapons in certain manners as opposed to an outright prohibition on certain weapons. Pl.'s Br. Resp. 13-17, ECF No. 13. The Defendants, in an attempt to show that other historical sources support their contention that the "dangerous and unusual" standard did not depend on the "manner of how the right is exercised," merely quote two statutes which prohibited one to "go or ride armed" and to "carry" "dangerous and unusual weapons," thus ironically reinforcing Plaintiff's argument. Defs.' Reply Br. Supp. n.5, ECF No. 14.

The Defendants also attempt to reinforce their argument that 18 U.S.C. § 922(o)'s prohibition on machine guns is "longstanding" and thus "presumptively lawful" by referencing *Drake*. In *Drake*, the Third Circuit considered New Jersey's ninety year old requirement that an applicant for a Permit to Carry a Handgun identify a justifiable need to carry said firearm outside the home. The requirement was ruled to be "longstanding" and "presumptively lawful," however, the Court did not provide a framework for determining what constituted "longstanding."[1] *Id.* at 432-34. The Defendants contend that so too should this Court uphold 18 U.S.C. § 922(o) without any discussion as to how a ninety year old law being considered "longstanding" indicates that a twenty-eight year old law is also "longstanding." *See* Defs.' Reply Br. Supp. 4-6, ECF No. 14.

---

[1] While *Drake* held a ninety year old statute to be "longstanding," other courts have held otherwise. "While two-hundred years from now, restrictions from 1909 may seem longstanding, looking back only to 1909, today, omits more than half of America's history." *Mance v. Holder*, 2015 WL 567302, (N.D. Tex. Feb. 11, 2015). *Mance* held that early twentieth century laws "do not date back quite far enough to be considered longstanding." *Id.* at 13 (citing *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012)). *Heller v. District of Columbia,* 554 U.S. 570 (2008) held that "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope is too broad." *Id.* at 634-35. For the Defendants to claim that a statute signed into law on May 19, 1986 is longstanding disregards nearly two-hundred years of history. The truth is that at the time of its ratification, the Second Amendment was written so that the people would be equally armed with the government.

### D. The First Amendment Provides Appropriate Guidance

In *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010), the Third Circuit cited *Heller's* repeated references to the First Amendment to state that the First Amendment ought to provide guidance in analyzing Second Amendment issues. *Marzzarella*, 614 F.3d at n. 4 ("we look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice"). Nonetheless, the Defendants attempt to mischaracterize *Drake* and *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) as having "expressly decided not to incorporate substantive First Amendment doctrine—such as the distinction between content-based regulations and time, place, and manner regulations—into the Second Amendment context." Defs.' Reply Br. Supp. 7, ECF No. 14. In reality, *Drake* merely refused to incorporate the First Amendment's prior restraint doctrine into the Second Amendment. *Drake* 724 F.3d at 435 ("we reject Appellants' invitation to apply First Amendment prior restraint doctrine rather than traditional means-ends scrutiny"). Whereas, *Barton* merely refused to incorporate the overbreadth doctrine, *Barton*, 633 F.3d at n.3, which, of course, the Supreme Court has previously stated cannot be applied outside of the First Amendment context anyway, *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1983). Plaintiff is not asking this Court to apply the prior restraint or overbreadth doctrines in the present case, but rather the traditional means-ends scrutiny that *Drake* stated *are* incorporated into the Second Amendment context and the circumstances in which those levels of scrutiny are applied.

Much as the Defendants attempt to argue that the "dangerous and unusual" standard does not merely refer to the carrying of weapons by citing sources describing the carrying of weapons, the Defendants next attempt to argue that intermediate scrutiny does not "only" apply to time, place, and manner regulations by citing cases that apply intermediate scrutiny to time, place, and

manner regulations. See Defs.' Reply Br. Supp. 7, ECF No. 14. The Defendants cite *City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41 (1986) which dealt with a local ordinance prohibiting adult theaters within 1,000 feet of a residential zone, church, park, or school. *Id.* at 43. The ordinance was "properly analyzed as a form of time, place, and manner regulation." *Id.* at 46. Also cited is *Garcetti v. Ceballos*, 547 U.S. 410 (2006) which dealt with speech by government employees. The primary consideration in *Garcetti* was, in essence, the manner of the speech, i.e. whether its was done in the manner of a private citizen, in which case the individual has a greater expectation of First Amendment rights, or in the individual's role as a government employee, in which case the individual "by necessity must accept certain limitations on his or her freedom." *Id.* at 418. Additionally, the Defendants cite *United States v. O'Brien*, 391 U.S. 367 (1968) in which the Court found the conduct at issue to not even be "speech." *Id.* at 375 ("We note at the outset that the [challenged statute] does not abridge free speech on its face, and we do not understand O'Brien to argue otherwise").

Indeed, all that the cases cited by the Defendants show is that time, place, and manner regulations are analyzed with intermediate scrutiny. However, as the Defendants seem to recognize, 18 U.S.C. § 922(o) is not a time, place, or manner regulation. Rather, it is a content based prohibition which must be analyzed with strict scrutiny.

### E. Defendants have Presented no Evidence of the "Dangers" of Machine Guns

The Supreme Court has stated that mere congressional statements of an activity's effects on interstate commerce do not suffice to prove an effect on interstate commerce. *United States v. Morrison*, 529 U.S. 598, 614 (2000). Nonetheless, in their Brief in Support, ECF No. 10, the Defendants provided no support for their contention that machine guns are "dangerous" or have any effect on commerce or crime other than mere statements. In their Reply Brief, the

Defendants now attempt to prove the threat to society posed by machine guns through the use of two statistics, neither of which is convincing.  Defs.' Reply Br. Supp. 8-9, ECF No. 14.

First the Defendants cite Marianne W. Zawitz, *Guns Used in Crime*, U.S. DEPARTMENT OF JUSTICE 4 (July 1995), which states that as of 1995, there were 240,000 machine guns registered with the ATF and "the [National Crime Information Center] stolen gun file contained reports on about 7,700 machine guns."  Defs.' Reply Br. Supp. 8-9, ECF No. 14.  Of course, neither Zawitz nor the Defendants elaborate as to any of the circumstances of the reports such as time frame, how many of the firearms were merely lost, how many were recovered, how many were owned by governmental entities, or more importantly, how many, if any, of the firearms were actually used in a crime.  The Defendants, in a further stretch attempt to show the dangers posed by machine guns, confuse machine guns with their semi-automatic counterparts by stating that in a 1991 study, "35% of juvenile inmates reported that they had owned a military-style automatic or semi-automatic rifle just prior to confinement."  *Id.* at 9 (citing Zawitz, at 6).  Little can be ascertained from the quoted assertion as, among other reasons, it is not known what percentage of the self reporting juvenile inmates, even if being truthful, had possessed a machine gun as opposed to a semi-automatic firearm.  It is telling that these two statistics are the only evidentiary support the Defendants have presented for their assertion that machine guns are dangerous and have a substantial effect on interstate commerce.

### F.  Plaintiff's Due Process and Detrimental Reliance Claims are Proper

Plaintiff has thoroughly briefed his due process and detrimental reliance claims in his Brief in Opposition, ECF No. 13, and they need not be repeated here.  However, the Defendants continue to claim that Plaintiff's Form 1 was "mistakenly" approved due to "ministerial error."  Defs.' Reply Br. Supp. 11, ECF No. 14.  Plaintiff is personally aware of at least three Form 1's

that were approved by three different ATF examiners.  These approvals were weeks apart and Plaintiff avers that discovery is likely to show even more approvals.  Accordingly, it is disingenuous, at best, for the Defendants to continue to blame the present situation on a mere "ministerial error."

## CONCLUSION

For the reasons set forth above and in Plaintiff's Brief in Opposition, the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

Respectfully submitted,

*/s/ David R. Scott*_____
DAVID R. SCOTT
Law Offices of J. Scott Watson, P.C.
24 Regency Plaza
Glenn Mills, PA 19342
David.Scott@jscottwatson.com
(610) 358-9600
*Attorney for Plaintiff*